```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/30/2024
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

STEPHEN VOGEL,

                Plaintiff,

    - against -

DAVID BORIS and MARSHALL KIEV,

                Defendants.

**20 Civ. 9301 (VM)**

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Plaintiff Stephen Vogel ("Vogel") brought this contract action on November 5, 2020 against defendants David Boris and Marshall Kiev (together "Defendants"). On August 24, 2023, the Court denied Vogel's motion for summary judgment and granted Defendants' motion for summary judgment. (See Decision and Order, Dkt. No. 75 [hereinafter the "D&O"], at 52-53.) Now before the Court is Defendants' motion to recover attorneys' fees and costs from Vogel. (See Notice of Mot. for Att'ys' Fees and Costs, Dkt. No. 89 [hereinafter the "Motion"].) For the reasons below, the Motion is granted in part and denied in part.

                **I.**    **BACKGROUND**

The Court assumes the reader's familiarity with the facts giving rise to the instant Motion. A more comprehensive description of the history of this case can be found in the

1

D&O resolving the summary judgment motions. (See D&O at 2-20.)[1]

In connection with their motion for summary judgment, Defendants moved for attorneys' fees and costs. (See Notice of Mot. for Summ. J., Dkt. No. 48.) In the D&O granting Defendants' motion for summary judgment, the Court directed the parties to submit a proposed briefing schedule on the issue of fees and costs, i.e., on the instant Motion. (See D&O at 53.) The parties proposed a briefing schedule on September 7, 2023 (see Dkt. No. 77), and the Court approved the briefing schedule shortly thereafter (see Dkt. No. 86). Meanwhile, Vogel on September 20, 2023 filed a Notice of Appeal from the Court's summary judgment decision. (See Dkt. No. 85.)

The Motion is now fully briefed. In support of the Motion, Defendants on September 29, 2023 submitted a memorandum of law (see Dkt. No. 91 [hereinafter "Def. Mem."]) and a declaration signed by their lawyer Jonathan Hochman (see Dkt. No. 90 [hereinafter "Hochman Decl."]). Vogel filed a memorandum in opposition to the Motion on October 27, 2023. (See Dkt. No. 92 [hereinafter "Pl. Mem."].) Defendants then filed a reply memorandum in further support of the Motion on

---

[1] The D&O is reported at 2023 WL 5471400.

2

November 17, 2023. (See Dkt. No. 93 [hereinafter "Reply"].) Accordingly, the Motion is ripe for resolution.

## II. DISCUSSION

Defendants contend that, as a result of the Court's summary judgment decision, they are entitled to recover attorneys' fees and costs from Vogel pursuant to the fee shifting provision contained in Section 12.07 of a contract (the "Operating Agreement" or "Agreement") between the parties, which provides,

> In the event that any dispute among the parties to this Agreement should result in an Action, the prevailing party in such Action will be entitled to recover from the losing party its reasonable fees, costs and expenses of enforcing any right of such prevailing party under or with respect to this Agreement and the transactions contemplated hereby, including such reasonable fees and expenses of attorneys and accountants, which will include all reasonable fees, costs and expenses of appeals.

(See Def. Mem. at 3-4.) Section 12.07 is silent on the issue of whether the fee shifting provision survives termination of the Agreement.

Defendants argue that Section 12.07 obligates Vogel to pay them $1,679,911.83 — an amount representing fees and costs Defendants say they reasonably incurred in defending against this lawsuit — plus the reasonable fees and costs they incurred in making this Motion and the reasonable fees and costs they will incur in litigating Vogel's appeal. (See id.

3

at 17.) In opposition to the Motion, Vogel argues (A) that Defendants have not shown that Section 12.07 survived the termination of the Operating Agreement; (B) that even if Section 12.07 remains enforceable, the amount of fees and costs requested by Defendants is unreasonably high and should be reduced by the Court; and (C) that the Court should stay until the resolution of Vogel's appeal the effect of any order awarding fees and costs to Defendants. (See Pl. Mem. at 1-9, 11.)

A.   WHETHER SECTION 12.07 IS ENFORCEABLE

At the summary judgment stage, the Court held that a separate provision of the Operating Agreement — Section 7.02(b) — did not survive the termination of the Agreement. (See D&O at 47.) Vogel argues that in light of this holding, Defendants must demonstrate under the summary judgment standard set forth in Federal Rule of Civil Procedure 56 that Section 12.07 *did* survive termination. (See Pl. Mem. at 2.) That standard provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.

Vogel raises no factual issue in connection with his argument. He does not, for example, contend that he did not

agree to the contractual provision in Section 12.07. Instead, he argues that Defendants must provide "a legal reason that Section 12.07 survived the termination of the Operating Agreement." (Pl. Mem. at 2.) Defendants respond that under Delaware law, which governs the Agreement (see D&O at 23 n.5), attorneys' fees generally survive the termination of a contract, even absent express survival language. (See Reply at 2.)

The Court holds that Section 12.07 remains enforceable. It is a general principle of contract law that "[a]lthough termination and cancellation of an agreement extinguish future obligations of both parties to the agreement, neither termination nor cancellation affect those terms that relate to the settlement of disputes," 13 Corbin on Contracts § 67.2,[2] and Delaware law incorporates this principle. See Manti Holdings, LLC v. Authentix Acquisition Co., No. 2017-0887-SG, 2020 WL 4596838, at *4–5 & n.47 (Del. Ch. Aug. 11, 2020) (holding that the right bestowed by contract provision awarding attorneys' fees to prevailing party in litigation "would be ineffective if it did not continue with other rights

---

[2] Contrast Section 12.07 with Section 7.02(b), which did not relate to dispute resolution but rather prohibited the parties from performing certain services on behalf of special purpose acquisition companies and from making certain investments. (See D&O at 12.) Thus, unlike Section 12.07, Section 7.02(b) set forth "future obligations" of the parties to the Operating Agreement instead of "terms that relate to the settlement of disputes." 13 Corbin on Contracts § 67.2.

5

and obligations that survived termination"), aff'd, 261 A.3d 1199 (Del. 2021). Since it sets forth "terms that relate to the settlement of disputes," 13 Corbin on Contracts § 67.2, Section 12.07 can be enforced notwithstanding the termination of the Operating Agreement.

Gary v. Beazer Homes USA, Inc., cited by Vogel, is not to the contrary. See 33 Del. J. Corp. L. 904 (Del. Ch. 2008). In that case, unlike here, "the plain language of the employment agreement indicate[d] that the entire employment agreement, including the attorneys' fees clause, was terminated." Id. at 905.[3] The Court thus proceeds to the question whether the amount of the fees and costs requested by Defendants is reasonable.

---

[3] Vogel cites two other cases that are not binding on this Court. See Quealy v. Anderson, 714 P.2d 667 (Utah 1986) (holding that accord and satisfaction precluded award of attorneys' fees); Ellis v. Butterfield, 570 P.2d 1334, 1340 (Idaho 1977) (stating that parties' termination of contract precluded them from later asserting attorneys' fees clause). The Court declines to follow these cases. As the Sixth Circuit has noted, Quealy and Ellis represent the minority view on the question whether an attorneys' fees provision survives a contract's termination. See Maida v. Ret. & Health Servs. Corp., Nos. 93-1625 & 93-1635, 1994 WL 514521, at *7 (6th Cir. Sept. 19, 1994) (citing Quealy and Ellis before stating that the "more widely-held view, however, is that an attorney fee provision applies to an action to determine the parties' rights and duties under the contract notwithstanding the contract's termination"). Further, it appears that the Idaho Supreme Court limited Ellis to its facts less than a decade after it was decided. See Ayotte v. Redmon, 718 P.2d 1164, 1164–66 (Idaho 1986) (distinguishing Ellis, affirming award of attorneys' fees to party that successfully sued for rescission of contract, and stating that "[w]ho wins the race to the courthouse is not dispositive of the entitlement to attorney's fees").

6

B.  WHETHER DEFENDANTS' REQUESTED FEES AND COSTS ARE REASONABLE

In contractual fee shifting cases such as this one, Delaware law requires courts to determine whether the requested fees are reasonable. See Mahani v. Edix Media Grp., Inc., 935 A.2d 242, 245 (Del. 2007). A judge presented with a request for fees must consider "whether the number of hours devoted to litigation was excessive, redundant, duplicative or otherwise unnecessary." Weil v. VEREIT Operating P'ship, No. 2017-0613-JTL, 2018 WL 834428, at *11 (Del. Ch. Feb. 13, 2018) (quoting Mahani, 935 A.2d at 247–48). A court, however, is not expected to conduct a "granular" line-item review of each invoice and time entry, as the prospect that a party to an arm's-length agreement will, if unsuccessful in litigation, have to "bear its own expenses" provides "'sufficient incentive to monitor its counsel's work and ensure that counsel [does] not engage in excessive or unnecessary efforts.'" Id., at *11-12 (alteration in original) (quoting Aveta Inc. v. Bengoa, No. 3598-VCL, 2010 WL 3221823, at *6 (Del. Ch. Aug. 13, 2010)); accord Fox. v. Vice, 563 U.S. 826, 838 (2011) ("[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection.").

7

To assess a fee's reasonableness under Delaware law, a judge must consider the following factors, which are set forth in the Delaware Lawyers' Rules of Professional Conduct:

- "the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly";
- "the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer";
- "the fee customarily charged in the locality for similar legal services";
- "the amount involved and the results obtained";
- "the time limitations imposed by the client or by the circumstances";
- "the nature and length of the professional relationship with the client";
- "the experience, reputation, and ability of the lawyer or lawyers performing the services"; and
- "whether the fee is fixed or contingent."

Id. at 245–46. With these factors (the "Mahani factors") in mind, the Court turns to the parties' contentions regarding Defendants' request for fees and costs.

1. The Specific Request for $1,679,911.83

Defendants contend that they are entitled to an award of $1,679,911.83 — an amount that represents the fees and costs they incurred through approximately March 2023, which is when the parties concluded summary judgment briefing. (See Hochman Decl. ¶ 3; see generally id. Ex. C.) In support of their Motion, Defendants submitted a spreadsheet documenting

8

2,360.8 hours of legal work performed by counsel and paralegal staff on this case, the amount of time spent on specific tasks, and the hourly rates charged for that time. (See Hochman Decl. ¶ 4; see generally id. Ex. C.) Defendants also submitted a spreadsheet documenting other costs that they incurred, such as amounts paid to an electronic discovery vendor and for service of subpoenas. (See Hochman Decl. ¶ 15; id. Exs. D-G.)

Defendants argue that the $1,679,911.83 figure is reasonable because they actually paid that amount, because they were defending against a $33 million damages claim, because the litigation was challenging, because the case was leanly staffed, and because the hourly rates charged by counsel were commensurate with those charged by comparable lawyers. (See Def. Mem. at 4-14.) In response, Vogel argues that Defendants' counsel and paralegals billed for an excessive number of hours, that Defendants' counsel employed "block billing," and that counsel was impermissibly vague in describing certain work performed on this case. (See Pl. Mem. at 2-9.)

Considering the parties' submissions, the record herein, and the relevant Mahani factors, the Court finds that Defendants' request for $1,679,911.83 is mostly reasonable but will be subjected to a modest reduction. After more than

9

two years of litigation, Defendants' counsel successfully obtained dismissal on summary judgment of a claim against Defendants for more than $33 million (see Dkt. No. 55 at 24) — a figure approximately twenty times greater than the fees and costs incurred by Defendants. See Mahani, 935 A.2d at 246 (instructing courts to consider "the amount involved and the results obtained"); accord U.S. Bank Nat'l Assoc. v. Dexia Real Est. Cap. Mkts., No. 12 Civ. 9412, 2016 WL 6996176, at *8 (S.D.N.Y. Nov. 30, 2016) ("That [the] attorneys' fees amount to less than 10% of the now-vacated judgment . . . further supports that the fees incurred were reasonable, as does [the] attorneys' ultimate success . . . in vacating that judgment.").

Further, the fact that Defendants have actually paid the $1,679,911.83 they incurred over nearly five years (see Hochman Decl. ¶ 5; id. Ex. C)[4] supports a finding of reasonableness. See Mahani, 935 A.2d at 246 (instructing courts to consider "the nature and length of the professional relationship with the client"); Weil, 2018 WL 834428, at *12 (stating that legal fees are reasonable if they were "actually

---

[4] Some of the fees incurred predated — but nevertheless appear to be related to — this litigation. (See, e.g., Hochman Decl. Ex. C at 1 (setting forth billing entries from 2018 regarding "Vogel threat" and "Vogel dispute").) At the summary judgment stage, Vogel also sought fees incurred prior to the filing of this lawsuit. (See Dkt. No. 57 Ex. 1 at 1 (listing fees incurred in 2018).)

10

paid" (quoting Delphi Easter Partners Ltd. P'ship v. Spectacular Partners, Inc., 19 Del. J. Corp. L. 722, 736 (Del. Ch. 1993))); Arbitrium (Cayman Islands) Handels AG v. Johnston, No. 13506, 1998 WL 155550, at *2 (Del. Ch. Mar. 30, 1998) (stating that the fact that client "actually paid" fees and had agreed to pay at hourly rates "despite the considerable risk that the fees would be sizeable even though he might lose the case" was evidence of "his belief that the fees he incurred were reasonable"), aff'd, 720 A.2d 542 (Del. 1998).[5]

The Court is mostly unpersuaded by Vogel's contention that Defendants' counsel billed too many hours. See Mahani, 935 A.2d at 246 (instructing courts to consider "the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service

---

[5] Vogel does not challenge the rates charged by Defendants' lawyers. See Mahani, 935 A.2d at 246 (instructing courts to consider "the fee customarily charged in the locality for similar legal services" and "the experience, reputation, and ability of the lawyer or lawyers performing the services"). The Court finds them to be reasonable. The highest hourly rate was charged by partner Johnathan Hochman, who billed 327 of the 2,360.8 hours and whose rate started at $850 per hour in 2018 and increased to $1,000 per hour by 2023. (See Hochman Decl. ¶ 13.) This rate is similar to the $1,070 per hour that one of Vogel's attorneys charged as of late 2022 (see Dkt. No. 57 ¶ 4), and courts in this District have approved such rates in cases like this one, which Vogel has acknowledged "concerned highly sophisticated financial instruments" and "required meticulous retracing . . . of a negotiation surrounding not only the contract . . . but an entire special purpose acquisition investment from beginning to end" (id. ¶ 7). See Dexia, 2016 WL 6996176, at *8 (stating that "partner billing rates in excess of $1,000 an hour[] are by now not uncommon in the context of complex commercial litigation" (alteration in original) (quoting Themis Capital v. Democratic Republic of Congo, No. 09 Civ. 1652, 2014 WL 4379100, at *7 (S.D.N.Y. Sept. 4, 2014))).

11

properly" and "the time limitations imposed by the client or by the circumstances"). He cites various cases in which courts approved as reasonable, for example, the dedication of 700 hours of attorney time to a two-year lawsuit and 1,000 hours of attorney time to a seven-year case. (See Pl. Mem. at 3 (citing Buffalo Laborers Welfare Fund v. Di Pizio Constr. Co., No. 16 Civ. 677, 2018 WL 11265028, at *5 (W.D.N.Y. Nov. 9, 2018) and Stanford University v. Associated Bus. Consultants Inc., 14 U.S.P.Q.2d (BL) 1326, 1328 (D. Kan. 1989)).) These cases finding requests *reasonable* do not support the proposition that dedicating 2,360.8 hours to a two-year case is *un*reasonable; it should go without saying that parties to fee disputes do not tend to argue that the amounts requested by their opponents are unreasonably *low*.

Vogel's reliance on Knox v. John Varvatos Enterprises Inc., 520 F. Supp. 3d 331 (S.D.N.Y. 2021), is similarly misplaced. The holding there — that it was excessive to dedicate 5,035 hours to a three-year employment discrimination case that went to trial, see 520 F. Supp. 3d at 346 — does not preclude a finding of reasonableness here, as Defendants' counsel in the instant matter billed fewer than half of the hours at issue in Knox.[6]

---

[6] The Court notes that Vogel's argument regarding the reasonableness of Defendants' request for fees and costs does not cite any case applying Delaware law, nor does he cite any other Delaware legal authority. As

12

At the same time, the Court agrees with Vogel that the number of hours billed by Defendants' counsel appears to have significantly exceeded those billed by Vogel's lawyers over a comparable period. Vogel sought reimbursement for 910.6 hours of attorney time as of the filing of his summary judgment motion (see Pl. Mem. at 3; Dkt. No. 57 ¶ 6), which is approximately 1,000 fewer hours than — i.e., about half of — those billed by Defendants' attorneys up to that point (see generally Hochman Decl. Ex. C.).[7] Further, 1,323.1 of the 2,360.8 hours billed by Defendants' counsel and paralegals were billed by partners (see Hochman Decl. ¶ 13), and it appears that at least some of these hours could have been logged by associates with lower billing rates (see id. ¶ 10 (stating that two partners and only one associate completed "[d]ocument review and productions" between November 2021 and February 2022)).

---

mentioned above, Delaware law governs the Operating Agreement in this diversity action, and thus Delaware law — not federal law — applies to the Agreement's fee shifting provision, which explicitly states that Defendants can recover only their *reasonable* fees, costs, and expenses. See F.H. Krear & Co. v. Nineteen Named Trs., 810 F.2d 1250, 1263 (2d Cir. 1987) (applying state rather than federal law in determining reasonableness of fee award under contractual fee shifting provision); Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC, 496 F. Supp. 2d 362, 364 (S.D.N.Y. 2007) (same, in diversity action).

[7] The Court finds based on the spreadsheet submitted by Defendants that their counsel and paralegals billed 421.8 hours after the filing of the opening summary judgment papers. (See Hochman Decl. Ex. C.) Subtracting that number from the total of 2,360.8 hours of time billed by Defendants' counsel and paralegals yields a result of 1,939 hours.

The Court finds Concord Steel, Inc. v. Wilmington Steel Processing Co. instructive under these circumstances. See No. 3369-VCP, 2010 WL 571934 (Del. Ch. Feb. 5, 2010), aff'd, 7 A.3d 486 (Del. 2010) (unpublished table decision). There, the plaintiff was entitled to reasonable attorneys' fees and costs under a contractual fee shifting provision. See 2010 WL 571934, at *1. The plaintiff requested $415,879.55, and the Court of Chancery, applying the Mahani factors, awarded $355,788.05. See id., at *3–4. The court made a "modest reduction" because it found (1) that "the amount billed by Defendants' counsel was roughly half of the amount billed by [plaintiff's] counsel" and (2) that partners billed a large majority of the fees incurred by the plaintiff despite the availability of associates. Id., at *4. Accordingly, the Court of Chancery awarded the plaintiff "only 80 percent of the fees billed by the three . . . partners who worked on this matter." Id.

Applying this Delaware precedent, the Court likewise will reduce by 80 percent the total amount billed by the three partners who represented Defendants in this case. Those three partners billed Defendants a total of $1,115,124.50. (See Hochman Decl. ¶ 13.) Eighty percent of that total is $892,099.60, or a $223,024.90 reduction. This $223,024.90

14

reduction will be subtracted from the total request of $1,679,911.83, yielding a result of $1,456,886.93.

Vogel's objections regarding block billing and vagueness are unavailing. With respect to block billing — "defined as the lumping together of discrete tasks with others that are not clearly defined, which makes it difficult for the court to allocate time to individual activities in order to gauge the reasonableness of time expended on each activity" (see Pl. Mem. at 4 (internal quotation marks removed) (quoting Douyon v. NY Med. Health Care, P.C., 49 F. Supp. 3d 328, 350 (E.D.N.Y. 2014))) — the examples cited by Vogel do not strike the Court as problematic, and in any event Delaware courts do not appear to prohibit the practice. See Concord Steel, 2010 WL 571934, at *3 n.22 ("The Court is not aware of any Delaware case that finds block-billing objectionable *per se*."). Similarly, Vogel cites six billing entries — representing a total of 7.3 hours — that he attacks as impermissibly vague, but the Court is not troubled by the descriptions of this work,[8] and Vogel's examples represent a negligible portion of the total fees requested. See Concord Steel, 2010 WL 571934, at *4 ("While Defendants used only two attorneys, Concord

---

[8] For example, "T/c KWM re: status and strategy" (Pl. Mem. at 7) appears to refer to a telephone conference with a partner and strikes the Court as an adequate description of an entry for 0.4 hours.

15

used six. But, the time billed by two of the Concord attorneys was negligible. I do not find the number of Concord attorneys excessive, as it is reasonable to use a team of four attorneys . . . ." (footnote omitted)).

Finally, to the extent that Vogel raises additional objections, they can be summed up as critiques of defense counsel's strategic choices. For example, Vogel complains that the time spent by defense counsel "on document review [was] unreasonable given the scope of discovery in this case," and he argues that Defendants "insisted on depositions that presented little-to-no probative value." (Pl. Mem. at 8–9.)

The Court declines to involve itself in "assess[ing] independently whether counsel appropriately pursued and charged for a particular motion, line of argument, area of discovery, or other litigation tactic." Weil, 2018 WL 834428, at *12 (quoting Danenberg v. Fitracks, Inc., 58 A.3d 991, 997 (Del. Ch. 2012)) (discouraging such inquiries). "For a Court to second-guess, on a hindsight basis, an attorney's judgment . . . is hazardous and should whenever possible be avoided." Id. (quoting Arbitrium, 1998 WL 155550, at *4). The Court's choice not to second-guess counsel's judgment is especially appropriate where Defendants' attorneys achieved pretrial dismissal of this lawsuit for their clients. See Mahani, 935 A.2d at 246 (instructing courts to consider "the

16

results obtained"). The Court thus grants the Motion in part, applies the modest reduction discussed above, and awards Defendants $1,456,886.93.

### 2. The Request for Fees and Costs Incurred in Making the Instant Motion and on Appeal

Defendants also claim entitlement to the fees and costs incurred in making the instant Motion and the fees and costs that will be incurred on appeal. (See Def. Mem. at 17.) Unlike Defendants' specific request for $1,679,911.83, this request is not supported by documentary evidence showing the number of hours worked, the rates charged, or the tasks completed. The Court is thus unable to apply the Mahani factors to determine whether such fees and costs are reasonable. This aspect of the Motion is therefore denied without prejudice to Defendants' right to move again for such fees and costs — and to support such a motion with appropriate evidence — at a future time.

### C. WHETHER THE COURT SHOULD ENTER A STAY PENDING THE RESOLUTION OF VOGEL'S APPEAL

Vogel argues that the Court should stay the enforcement of any fee award pending the outcome of his appeal. (See Pl. Mem. at 11.) Defendants contend in response that Vogel is required to post a bond to obtain a stay. (See Reply at 10.)

Defendants are correct. See Fed. R. Civ. P. 62(b) (stating that "after judgment is entered, a party may obtain a stay by providing a bond or other security"); John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp., No. 91 Civ. 8635, 1993 WL 515376, at *2 (S.D.N.Y. Dec. 8, 1993) (declining to grant a stay pending appeal absent the posting of a bond). The Court thus declines to enter a stay at this time.

### III. ORDER

For the foregoing reasons, it is hereby

**ORDERED** that the motion (see Dkt. No. 89) filed by defendants David Boris and Marshall Kiev (together "Defendants") to recover attorneys' fees and costs is hereby **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that plaintiff Stephen Vogel ("Vogel") is accordingly directed to reimburse Defendants in the amount of $1,456,886.93 in reasonable attorneys' fees and costs; and it is further

**ORDERED** that the Clerk of Court is respectfully directed to enter judgment in favor of Defendants and against Vogel in the amount of $1,456,886.93.

**SO ORDERED.**

Dated:  30 April 2024
        New York, New York

_____
Victor Marrero
U.S.D.J.